# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUENTIN MCCLELLAN, | No. 3:18-CV-02162 |
| Plaintiff, | (Judge Brann) |
| v. | |
| REDNER'S MARKETS, INC., JIM POLCHIN, BOB MCDONOUGH, and RICK MERKEL, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 10, 2020

**I.    BACKGROUND**

On November 8, 2018, Quentin McClellan filed an 11-count complaint against Defendants Redner's Market, Inc., Jim Polchin, Bob McDonough, and Rick Merkel, asserting various violations of employment discrimination laws, including Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act.  Discovery has concluded, and Defendants have filed a motion for summary judgment.[1]  The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

---

[1] At the outset, McClellan "concedes that, following discovery, there is not sufficient evidence to support claims of individual liability against Defendants Polchin and Merkel, and does not oppose Defendants' motion as to those individual defendants."  Doc. 25 at 5, n. 3.  Accordingly, I grant summary judgment as to all claims against those individuals and dismiss

## II.   DISCUSSION

### A.   Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[2] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

---

them from the action. Therefore, throughout the remainder of this memorandum opinion, when the Court refers to the "Defendants," it refers specifically to Redner's and Bob McDonough.

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[3] Fed. R. Civ. P. 56(a).
[4] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[5] *Clark*, 9 F.3d at 326.
[6] *Id*.

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[9] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[10] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

---

[7] *Liberty Lobby, Inc.*, 477 U.S. at 252.
[8] *Id.*
[9] *Id.*
[10] *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

absence of a genuine issue of material fact."[11]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[12]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[15]  Moreover, "if a party fails to

---

[11]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[12]  *Id*.
[13]  *Liberty Lobby*, 477 U.S. at 250.
[14]  Fed. R. Civ. P. 56(c)(1).
[15]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[16] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[17]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[18] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[19] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[20]

### B. Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts of this matter.[21]

Quentin McClellan was employed by Redner's Markets ("Redner's") for approximately eight years and at various Redner's locations, predominantly

---

[16] Fed. R. Civ. P. 56(e)(2).
[17] Fed. R. Civ. P. 56(c)(3).
[18] *Liberty Lobby*, 477 U.S. at 249.
[19] *Id*.
[20] *Id*. at 249–50 (internal citations omitted).
[21] These serve as the undisputed facts drawn from the parties' statements of material facts, affidavits, and exhibits. They are recounted in the manner most favorable to McClellan, who is the party opposing summary judgment.

working as a meat manager.[22] McClellan is African-American. In February 2017, McClellan reported seeing a photograph of an African American male juxtaposed with a photograph of a baboon or a gorilla in the lunch room at the Pittston location of Redner's.[23] Although the parties dispute the exact sequence of the process, they agree that Redner's reviewed videotapes of the lunch room, identified the employee responsible for posting the offensive photograph, and fired him.[24]

At around the same time, McClellan was enrolled in Redner's Manager Training Program.[25] On March 23, 2017, McClellan discussed issues and challenges related to the training program with the program's leader (Mr. Kostelac).[26] The following day, McClellan sent Mr. Kostelac a separate list of concerns he had.[27] Approximately one week later, McClellan had another conversation with Redner's supervisors directed at improving his workplace performance. During that conversation, McClellan admitted that he struggled with motivation to come to work on time.[28] Following these discussions, McClellan's participation in the Manager Training Program ended and he returned to his position as a meat manager in the Pittston location.[29]

---

[22] Doc. 18 ¶ 1.
[23] *Id.* ¶ 84; Doc. 24 ¶ 84.
[24] Doc. 18 ¶¶ 90-92.
[25] *Id.* ¶ 115.
[26] *Id.* ¶ 123.
[27] *Id.* ¶ 124.
[28] *Id.* ¶131; Doc. 24 ¶ 131.
[29] Doc. 18 ¶ 134.

On or about July 3, 2017, McClellan took leave under the FMLA.[30] This leave was expected to last until July 23, 2017,[31] and had been recommended by Mr. Treichler, the store manager, based on a conversation with McClellan in June 2017.[32] After this leave ended, McClellan requested additional FMLA leave in August 2017.[33] On September 5, 2017, Redner's Markets terminated McClellan's employment, informing him that he had left work early on September 2, 2017 and had not worked the required number of hours for that week (45).[34] During deposition, McClellan admitted that he told Redner's that he believed that he had worked 45 hours, but he acknowledges that he worked 35 hours during the week in question, excluding his time working on September 2, 2017.[35] McClellan further acknowledges that he left work about five hours early that day.[36]

### C. Analysis

#### 1. Race-based Claims

McClellan asserts both discrimination and retaliation claims under Title VII and two other statutes.[37] McClellan proceeds under the *McDonnell Douglas*

---

[30] *Id.* ¶ 135; Doc. 24 ¶ 135.
[31] Doc. 18 ¶ 136.
[32] *Id.* ¶ 138.
[33] Doc. 24 ¶ 167; 77.
[34] Doc. 18 ¶ 8.
[35] Doc. 24 ¶ 8.
[36] Doc. 17, Ex. 3, 157:6-8.
[37] Employment discrimination claims under 42 U.S.C. § 1981 are generally subject to the same analysis as discrimination claims based on Title VII. The same is true for such claims under the PHRA. Thus, the Court need only analyze Plaintiff's claims under the pertinent Title VII law. If summary judgment is proper, or improper, on the merits of the Title VII discrimination claims, the same result would necessarily follow for the parallel Section 1981

burden-shifting framework.[38]  In cases of indirect evidence, a plaintiff must first make a *prima facie* showing of discrimination.[39]  If the plaintiff cannot do so, the defendant is entitled to summary judgment.  If the plaintiff does establish a prima facie case, the defendant must produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action.[40]  Once it does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason was pretextual and that unlawful discrimination was the real reason for the employment action.[41]

In order to survive summary judgment on his discrimination claim, McClellan must first show the following: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the adverse employment action gave rise to an inference of unlawful discrimination.[42]  "To prevail on a claim of disparate treatment under Title VII ... the plaintiff must demonstrate purposeful discrimination."[43]

---

and PHRA discrimination claims.  Counts 1, 2, and 11 rise and fall together.  *See Alcantara v. Aerotek, Inc.*, 2018 WL 3007528 at *14 (M.D. Pa. June 15, 2018).

[38] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[39] *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999).
[40] *Id.*
[41] *Id.*
[42] *Durst v. City of Philadelphia*, 798 Fed. Appx. 710, 713 (3d Cir. 2020) (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999)).
[43] *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990).

Separately, a "prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[44] "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[45]

Even assuming that Plaintiff has established the *prima facie* case for each of these theories, he has not put forth sufficient evidence to call into question the Defendants' proffered non-discriminatory reasons for termination. To discredit a proffered reason, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence, and hence infer that the employer did not act for the [stated] non-discriminatory reasons."[46] The plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

---

[44] *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (Hardiman, J.) (internal quotation marks omitted).
[45] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[46] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[47]

McClellan's argument, in short, is that after he complained about "an incident of racial harassment in Redner's workplace"[48] in February 2017, Defendants began a campaign to retaliate against him and terminate him from his position. He claims there is "abundant evidence" that his protected activity was the "spark" that led to his termination.[49] Defendants, for their part, argue that McClellan was fired on September 5, 2017 "for failing to work his required hours in the week of September 2, 2017" and for "leaving work early on September 2, 2017 without informing his supervisor."[50]

McClellan attempts to establish pretext by raising a variety of arguments, either unsupported by the record or largely irrelevant to the issues at hand. None of those arguments create a genuine issue of material fact that can withstand summary judgment. For example, McClellan argues that there was some confusion over the operative schedule for the week in question. He claims that there were different versions of schedules and that one of them showed that Mr. McClellan was only scheduled to work under 10 A.M. on the day in question. He suggests that this alone permits a conclusion of pretext, but regardless of what

---

[47] *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996).
[48] Doc. 25 at 7.
[49] *Id.*
[50] Doc. 17 at 1.

these different schedules said, Mr. McClellan admitted that he left work *early* on Saturday, showing he knew that he was supposed to work for more time than he actually did.[51]

Next, McClellan disputes Defendants' assertion that McClellan's failure to work a full work-week was grounds for termination. McClellan argues that this explanation was "inconsistent with their own testimony, policies and practices."[52] Again, this theory is contradicted by the record and cannot create a genuine issue of material fact. McClellan points to specific exceptions to the hours requirement, but he does not show that any of those exceptions were applicable to him.[53]

Finally, McClellan argues that there is a dispute over whether or not he left work early *with* Defendants' permission. He claims that this absence was "pre-approved by management." However, "[a]s a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."[54] This rule has been extended to self-serving deposition testimony.[55] Without more – and juxtaposed against the other deposition testimony by

---

[51] Doc. 17 Ex. 3 174:9-16.
[52] Doc. 25 at 14.
[53] Doc. 24 at 5.
[54] *Gonzalex v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).
[55] *See, e.g.*, *Irving v. Chester Water Authority*, 439 Fed.Appx. 125, 127 (3d Cir. 2011); *see also Abuomar v. Department of Corrections*, 754 Fed.Appx. 102, 108 (3d Cir. 2018).

McClellan, admitting that he left work early (as well as the other evidence in the record) – he cannot survive summary judgment.[56]

As this Court has previously noted, the "test is not simply whether a fact finder could conclude that the reasons are not credible but instead whether Plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence."[57] McClellan has not put forth sufficient evidence on this issue to show that the reasons Defendants give were "so plainly wrong that [they] could not have been [Defendants'] real reasons."[58]

In sum, McClellan has failed to raise a genuine issue of material fact on the question of whether Defendants' proffered motive was pretextual. Therefore, the racial discrimination and retaliation claims must fail.[59]

### 2. FMLA Claims

McClellan alleges both interference (Count 3) and retaliation (Count 4) claims under the FMLA, claiming that the Defendants violated the FMLA by disciplining McClellan and terminating his employment.[60] Although firing an

---

[56] *See Irving*, 439 Fed.Appx. at 127 ("In light of both his earlier testimony and the other record evidence, [plaintiff's] subsequent self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").
[57] *Alcantara v. Aerotek, Inc.*, 2018 WL 3007528 at *22 (M.D. Pa. June 15, 2018).
[58] *Id*.
[59] Even under the more forgiving "mixed motive" theory, McClellan fails to establish that race was a motivating factor for any employment decision Redner's made.
[60] Doc. 1 ¶ 85-90.

employee may constitute both interference and retaliation, it seems that the "gravamen of [McClellan's] claim sounds in retaliation."[61]  It is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA.[62]

In order to support a claim for interference under the FMLA, a plaintiff must establish that: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[63]

To prove retaliation under the FMLA, McClellan must show that: (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse action was causally related to his invocation of rights.[64]

The parties do not dispute that McClellan provided notice of his intent to take leave under the FMLA, or that there was an adverse employment action taken.  Rather, the disagreement appears to stem from whether McClellan has established that his FMLA leave was the cause of his termination.  To establish an "inference

---

[61] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301 (3d Cir. 2012).
[62] 29 U.S.C. § 2615(a)(1); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).
[63] *Ross v. Gilhuly*, 755 F.3d 185
[64] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012).

that a causative link exists between [his] FMLA leave and [his] termination,"[65] McClellan asserts that the temporal proximity between his return from the FMLA leave and his firing from Redner's is enough to create a genuine dispute of material fact and survive summary judgment.[66]

The United States Court of Appeals for the Third Circuit has held that when the "temporal proximity" between the protected activity (the FMLA leave) and the adverse action (McClellan's firing) is "unduly suggestive," this is "sufficient standing alone to create an inference of causality and defeat summary judgment."[67] The Third Circuit has previously found that a ten-day gap between protected activity and adverse action is close enough in time to establish causation.[68]  It is undisputed that McClellan was fired eight days after returning from leave. Therefore, a factfinder could reasonably conclude that there is a causal relationship between the leave and the adverse employment action.  Defendants do not cite any case law to contradict the conclusion drawn from the temporal proximity between the two actions.  McClellan has therefore established a *prima facie* case.

Next, the Court examines Defendants' proffered reason for the adverse employment action and considers whether McClellan has raised a genuine dispute over whether or not this reason was pretextual.  Again, Defendants argue that

---

[65] *Id.* at 307.
[66] Doc. 25 at 18.
[67] *Lichtenstein*, 691 F.3d at 307 (3d Cir. 2012) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).
[68] *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003).

McClellan was fired for a series of workplace infractions and poor performance. This constitutes a legitimate, non-discriminatory reason for the firing. Now, McClellan must establish pretext.

He relies on the unduly suggestive temporal proximity between his FMLA leave and his termination to establish pretext. "Although this fact is important in establishing plaintiff's prima facie case, there is nothing preventing it from also being used to rebut defendant's proffered explanation."[69] McClellan "does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted."[70] A reasonable fact finder could decide that the FMLA leave played an improper role in McClellan's termination. Furthermore, with respect to McDonough, Defendants awkwardly acknowledge that he "arguably, though not admittedly" acted on behalf of Redner's in firing McClellan. Therefore, summary judgment is inappropriate on the FMLA claims as to both Redner's and McDonough.

### 3. Disability Discrimination Claims

Finally, McClellan alleges a number of claims against Redner's under the ADA and PHRA (discrimination, failure to accommodate, and retaliation).[71] The Court considers those claims one at a time.

---

[69] *Sowell v. Kelly Services, Inc.*, 139 F.Supp.3d 684, 697 (E.D. Pa. 2015).
[70] *Lichtenstein*, 691 F.3d 294 (3d Cir. 2012).
[71] McClellan concedes that the only discrimination potentially at issue relates to his firing. *See* Doc. 25 at 21.

### a. Discrimination Claim

To establish a prima facie case of discrimination under the ADA (Counts 5 and 6), McClellan must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.[72]

Defendants contest each prong of this claim; they argue that McClellan has failed to establish any of them. The Court agrees that McClellan has not established that he is entitled to protection under the ADA, foreclosing this claim at the *prima facie* stage.

McClellan asserts that he "suffers from depression, a disability."[73] It is unclear whether McClellan was diagnosed at the time, but the existence of a condition is not sufficient to establish a disability under the ADA.[74] "To establish a qualifying disability, the plaintiff must show either that he has a physical or mental impairment that *substantially limits* one or more major life activities or that he has a record of such an impairment or is regarded by his employer as having such an impairment."[75] Plaintiff, however, points to nothing in the record establishing that he was *substantially* limited in performing any major life

---

[72] *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).
[73] Doc. 25 at 20.
[74] *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 n. 5 (3d Cir. 2001).
[75] *Lynch v. Matthews Intern.*, 430 Fed.Appx. 109, 111 (3d Cir. 2011) (quoting 42 U.S.C. § 12102(2) (2008)) (internal quotation marks omitted) (emphasis added).

activities.[76] His conclusory claim that suffers from depression, and that depression is a disability, does not tell this Court anything about how his disability limits a major life activity.

Therefore, he can only attempt to establish that Defendants regarded him as disabled and subsequently discriminated against him. He has not created a genuine issue of material fact on this point. The vague comments made by individuals which McClellan points to do not suffice, because they do not establish that anyone at Redner's perceived him as being disabled, as defined by the ADA. Simply expressing some concern about McClellan's health and suggesting he see a doctor does not indicate that McClellan was perceived as disabled. Because McClellan offers no other evidence here, Defendants are entitled to summary judgment on this issue.

### b.  Failure to Accommodate Claims

The ADA provides that an employer discriminates against an employee when it does not "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee]."[77] To succeed on a failure to accommodate claim (Counts 9-10), a plaintiff must show: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or

---

[76] *See* Doc. 25 at 20-23.
[77] 42 U.S.C. § 12112 (2009).

assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."[78]

Because, as discussed above, McClellan has not established that he was disabled and that his employer knew he was disabled, he cannot survive summary judgment on this claim. Beyond that dispositive issue, McClellan conflates his failure-to-accommodate claims with his retaliation claims. He says that those claims are all based on his request "on August 30, 2017 to leave work early to attend a psychiatric appointment, and his subsequent termination." But McClellan does not claim that he was prevented from going to that appointment on August 30, 2017. McClellan's argument is unclear as to how Redner's failed to accommodate this appointment when, "indeed, [McClellan] took the requested leave"[79] – he appears to blend the issue of accommodation and retaliation, but to no avail. Because of the two fundamental shortcomings with this argument, McClellan cannot survive summary judgment on this claim.

### c.   Retaliation Claims

To sustain a claim of retaliation under the ADA (Counts 7 and 8), McClellan must establish the following: (1) protected activity by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the protected activity and the adverse employment action.[80] McClellan has established

---

[78]   *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).
[79]   *Id*. at 157.
[80]   *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015).

a *prima facie* case, based on the request for accommodation, his firing, and the temporal proximity between the two.  Importantly, in the ADA retaliation context, a plaintiff need not show that he was actually disabled; he "need only show that he or she requested an accommodation in good faith."[81]  Defendants do not contest that the requests were made in good faith.

Therefore, the Court again considers whether McClellan has created a genuine issue of material fact as to whether Defendants' proffered rationales for firing McClellan were pretextual.  For the same reasons discussed in the FMLA context, summary judgment is inappropriate on this claim.

### III.   CONCLUSION

Summary judgment is granted as to Counts 1, 2, 5, 6, 9, 10, and 11. Summary judgment is denied as to Counts 3, 4, 7, and 8.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[81]   *Barber v. Subway*, 131 F.Supp.3d 321, 329 (M.D. Pa. 2015).